IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HOPE P. BRENNAN,

                Plaintiff,                OPINION and ORDER

v.

                                            21-cv-365-wmc

BNSF RAILWAY COMPANY,

                Defendant.

---

Plaintiff Hope Brennan was injured while working as a conductor for defendant BNSF Railway Company. She is proceeding to trial on October 31, 2022, on a claim under the Federal Employers' Liability Act. In anticipation of the final pretrial conference scheduled for October 19 at 3:00 p.m., this order addresses the parties' motions in limine.

OPINION

**I. Brennan's Motions in Limine**

**A. Motion to preclude BNSF from referring to collateral source benefits, including Railroad Retirement Benefits (dkt. #66)**

Brennan asks the court to exclude evidence of collateral source benefits, including Railroad Retirement Board disability benefits, state-sponsored health insurance or health insurance offered under the Affordable Care Act. BNSF concedes that collateral source benefits are generally inadmissible, and agrees not to introduce evidence of such benefits *unless* Brennan opens the door to such evidence by asserting that she did not receive benefits or suffered a financial hardship due to a lack of income. The approach proposed by BNSF is how this court generally handles collateral source benefits, *see Berry v. Wisconsin Central*, 21-cv-220-wmc, 2022 WL 3576203, at *2 (W.D. Wis. Aug. 19, 2022), and that

approach is appropriate here. Thus, the court will GRANT this motion, with the caveat that BNSF may introduce evidence for impeachment purposes if Brennan opens the door to such evidence at trial.

### B. Motion to preclude BNSF from arguing that Brennan would have retired at age 60 under the 60/30 Rule (dkt. #68)

Brennan moves to bar evidence of her possible eligibility to receive future retirement benefits under the Railroad Retirement Board's "60/30" rule, which provides that railroad employees are eligible for retirement benefits after reaching 60 years of age and 30 years of service. BNSF responds that it will not seek to introduce this evidence except for impeachment purposes. Therefore, the motion will be GRANTED, and the evidence regarding potential future retirement benefits will be excluded except for impeachment purposes if Brennan opens the door at trial by claiming she would not have retired at age 60.

### C. Motion to preclude BNSF from arguing or offering evidence that Brennan was contributorily negligent (dkt. #85)

Brennan contends that BNSF failed to disclose during discovery any evidence that would support an argument of her contributory negligence. In response, BNSF identifies evidence that it disclosed and intends to present at trial to argue that Brennan *was* contributorily negligent. Because FELA allows railroads to present a contributory negligence defense, *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 171 (2007), and because BNSF asserts that it disclosed the relevant evidence to Brennan, this motion will be DENIED. To the extent that Brennan is arguing that BNSF's evidence is insufficient to

prove contributory negligence as a matter of law, a motion in limine is not well suited for seeking judgment as a matter of law. Rather, Brennan could have moved for summary judgment on that issue; she also may move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the close of the evidence.

**D. Motion to exclude evidence of safety rules that delegate BNSF's duty to provide employees with a safe place to work (dkt. #89)**

Brennan seeks to preclude BNSF from relying generally on its "empowerment" of employees to ensure compliance with safety rules as support for an argument that it delegated its duty to provide a safe workplace to its employees. BNSF responds that it does not intend to argue that it delegated its own duty to provide a safe workplace, but that it does intend to argue Brennan failed to follow specific safety rules regarding going between train cars without permission. Since Brennan cites no legal authority that would preclude BNSF from introducing specific safety rules that applied to the underlying incident, this motion will be DENIED.

**E. Motion to preclude BNSF from presenting evidence and arguments about Brennan's previous medical conditions and claims unrelated to this case (dkt. #91)**

Under FELA, a railroad company is liable so long as its negligence contributed in some way to the plaintiff's injury. 45 U.S.C. § 51 (railroad employer liable if an employee's injury or death is caused "in whole or in part" by employer's negligence). Thus, a plaintiff's damages cannot be reduced, even if something else aside from the employer's negligence may have also contributed to the plaintiff's injuries. *See Norfolk & W. Ry. Co. v. Ayers*, 538

U.S. 135, 166 (2003) ("Under the FELA, an employee who suffers an 'injury' caused 'in whole or in part' by a railroad's negligence may recover his or her full damages from the railroad, regardless of whether the injury was also caused 'in part' by the actions of a third party."). Relying on this rule, Brennan argues that BNSF should be precluded from introducing evidence of any preexisting conditions that contributed to the shoulder injuries she sustained while attempting to couple the air hoses.

BNSF agrees that it may not argue Brennan's preexisting medical conditions contributed to any shoulder injury caused in part by the railroad's negligence, but it argues that Brennan's medical records showing arthritic changes in her shoulder, as well as generalized pain complaints, *are* relevant to the jury's determination of the length of Brennan's likely work-life. However, BNSF has identified no expert opinion testimony or other evidence supporting an inference that Brennan had any existing medical conditions that would likely have affected her work-life expectancy. Thus, BNSF's suggesting that arthritis or pain eventually would have limited Brennan's ability to continue to work would appear to be speculative, at best, and any arguable, minor probative value of this evidence would be outweighed by the risk of undue prejudice and of potential jury confusion and misuse. Therefore, this motion will be GRANTED.

F. **Motion to exclude evidence, arguments and comments that Brennan failed to mitigate her damages with respect to alternate employment (dkt. #103)**

The parties agree that Brennan's injury precludes her from working in her previous occupation as a conductor for BNSF. After her injury, however, Brennan returned to school, earned an associate's degree in applied science and obtained a job as a medical

4

technician for Mayo Clinic. Thus, Brennan argues that because she pursued and obtained alternative, full-time employment, BNSF should be precluded from arguing that she failed to mitigate her damages.

While BNSF responds that it should still be permitted to introduce evidence that Brennan declined to pursue a higher paying job with BNSF in Minneapolis, that argument is a nonstarter since the Minneapolis job would have required Brennan to relocate her home and family, and BNSF cites no legal authority that reasonable mitigation would require relocation to a different city. On the contrary, the single, appellate court decision that BNSF cites in support of this argument actually stands for the opposite conclusion. *See Coleman v. City of Omaha*, 714 F.2d 804, 808 (8th Cir. 1983) (plaintiff "cannot be required to move from his home 'in order to reduce damages caused by the [defendant's] unlawful acts'"). BNSF's alternative argument that Brennan could increase her earning potential by obtaining a bachelor's degree is also unreasonable and unsupported by any legal authority. Accordingly, this motion will be GRANTED.

**II. Brennan's motion for discovery sanctions (dkt. #111)**

Brennan also moves for discovery sanctions against BNSF based on its failure to make a reasonable search for the identity of the employee who reported a defect and service of the airbrake system of the locomotive involved in Brennan's accident. Specifically, in the early morning of February 7, 2019, the day of Brennan's injury, an unknown employee made a written report of a problem with the airbrake system on BNSF 7492. The same (or perhaps another unknown) employee then noted the airbrake system had been fixed. Later that same day, Brennan was injured when attempting to couple an air hose on the

BNSF 7492, which she alleges was frozen and stiff due to a problem with the airbrake system.

After filing this lawsuit, Brennan sought the identify of all employees who had reported problems or serviced that engine. While BNSF disclosed several such individuals, it failed to track down and identify the employee who reported the problem or worked on the locomotive on the morning of Brennan's injury. On July 1, 2022, Brennan then asked BNSF specifically to identify the employee who reported the problem on February 7, 2019, but BNSF still has been unable to identify that individual. According to BNSF, this is because it does not maintain or have regular access to records of all employees who report problems with or perform maintenance on locomotives. Dubious though the court is of that response, Brennan only argues now on the eve of trial that because BNSF failed to make reasonable efforts to identify the employee, it should be precluded from arguing at trial that the locomotive was not defective nor that the defect did not cause her injury.

Even if timely, such a draconian sanction seems too much, but the court will reserve ruling on this motion. Certainly, Brennan should have raised this issue with the court long before now, and she provides no persuasive explanation for waiting until shortly before trial to seek the court's assistance regarding this still unknown employee. On the other hand, BNSF's explanation for its failure to identify the unknown employee(s) is similarly lacking, and appears to justify some sanction. Accordingly, the court will hear further from defendants' counsel at the final pretrial conference as to the reasons for BNSF's failure to track down the service notes author, as well as from both sides regarding an appropriate sanction.

**III. BNSF's Omnibus Motion in Limine (dkt. #43)**

    **A. Motion to preclude certain opinions of Brennan's liability expert Gregory Drakulic**

Outside expert Gregory Drakulic was retained by Brennan to evaluate the circumstances surrounding her injury, as well as opine about BNSF's compliance with various safety rules or regulations. BNSF moves to preclude Drakulic from offering testimony about three, specific opinions on the grounds that they have no relevance to the cause or extent of Brennan's injury, nor to any other disputed issues in this case, and would serve only to prejudice BNSF.

In response, Brennan concedes that Drakulic's opinion about BNSF's miscoding a form after Brennan's injury is not relevant and should be precluded. (Drakulic Rep. (dkt. #32) 11–12.) Therefore, the motion will be GRANTED with respect to that opinion. However, Brennan argues that the other, two opinions identified by BNSF are relevant and should be admitted. Those two opinions are that: (1) BNSF's calibration of an air flow meter in September 2018 was 13 days overdue in violation of 49 C.F.R. § 229.29(b) (*id.* at 11); and (2) BNSF operated the 7492 locomotive with a smashed handrail between December 27, 2018 and January 7, 2019, in violation of 49 U.S.C. § 20303(a) (*id.* at 10). Brennan also concedes that her accident and injuries were not caused by, or even related to, either of these alleged failures by BNSF. Nevertheless, she argues that Drakulic's opinions, and the underlying evidence supporting them, are relevant to show that BNSF neglected maintenance and inspection procedures necessary to keep its workplace safe.

Brennan's argument flies in the face of the prohibition on proof of a character trait to prove a person acted in accordance with the trait on any occasion under Fed. R. Evid.

7

404(a).  Regardless, the court concludes that Drakulic's opinions are not relevant to the issues remaining in this case.  For example, Drakulic does not opine that the failure to calibrate air or a one-week delay in fixing a handrail are even similar to the problem that caused Brennan's injury in this case.  Instead, Brennan intends to use Drakulic's opinions to show that BNSF had a general propensity to maintain an unsafe workplace.  Since such use is prohibited by the Federal Rules of Evidence, Brennan may not introduce evidence relating to those two opinions.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").  Accordingly, this motion will be GRANTED.

B. Motion to preclude duplicative and cumulative expert testimony

BNSF moves to preclude Brennan from introducing duplicative and cumulative expert testimony from her liability experts, Gregory Drakulic and Brandon Ogden, on the following topics: (1) the air hoses at issue in this case were not capable of being properly coupled; (2) BNSF failed to perform proper repairs to BNSF 7492 before allowing it to be placed into service; (3) BNSF failed to ensure the air brake equipment on BNSF 7492 was in safe and suitable condition for service; (4) BNSF was in violation of 49 C.F.R. § 229.7 – air hoses that cannot be safety coupled are appurtenances in improper condition and unsafe to operate without unnecessary danger of personal injury; (5) Brennan was not provided with a reasonable safe place in which to work; and (6) Brennan did not violate any rules, regulations, or act negligently to cause the incident.  Brennan opposes the motion, stating that she does not intend to introduce duplicative or cumulative testimony at trial.  Rather, she represents that Drakulic's focus will be on mechanical issues with the

involved locomotives and their component parts, while Ogden's testimony will focus on global safety issues.

While BNSF identifies several opinions in Drakulic's and Ogden's reports that certainly appear to be duplicative, the court will DENY the motion at this time, subject to revisiting the motion should Brennan abuse this limited leeway at trial. Still, both parties should be aware that unreasonably duplicative and cumulative testimony will not be admitted at trial and that such objections are appropriately made if such testimony has already been adequately addressed by earlier, uncontested testimony.

### C. Motion to preclude Brennan's experts from offering legal conclusions

BNSF moves to preclude Brennan's liability experts from providing opinions about whether BNSF failed to provide Brennan a safe place to work in violation of FELA. The motion will be GRANTED IN PART and DENIED IN PART. As a general matter, all witnesses are precluded from expressing legal opinions, *U.S. v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008), and the court will not permit witnesses to testify about the meaning of a law or how the law dictates a particular answer to an ultimate question in the special verdict. Still, under Federal Rule of Evidence 704, experts and other witnesses may give testimony as to their lay understanding of the relevant legal elements and even answer an ultimate fact issue to be resolved in the case if based on their field of expertise, rather than law, and disclosed in that expert's report.

In this instance, therefore, the parties' experts may not opine whether BNSF violated FELA, nor may make conclusory statements about whether the workplace or locomotive at issue was "safe" for purposes of FELA liability. However, the experts may

offer timely disclosed expert opinions regarding the relevant standards of care for their profession, and whether specific conditions or actions by BNSF rendered the workplace, locomotive, or other equipment unsafe, defective or in violation of that standard of care, as well as the basis for those opinions if also previously disclosed.

### D. Motion to preclude testimony and argument regarding "safer" workplace, "safer" tools, "safer" equipment or "safer" work methods

BNSF moves to preclude Brennan from arguing and presenting evidence that BNSF could have provided her with a safer workplace, safer tools or equipment, or safer methods of work, including a Mertins bar, winter preparedness protocol, or different equipment for winter conditions. BNSF also argues that under FELA, it was required to provide a reasonably safe working environment, not the safest environment possible.

Under FELA, BNSF had a duty to provide Brennan a reasonably safe working environment. *Abernathy v. E. Illinois R.R. Co.*, 940 F.3d 982, 988 (7th Cir. 2019). Although BNSF is correct that the existence of safer workplace alternatives would not be sufficient, at least by themselves, to establish negligence, yet "evidence of a safer alternative method is relevant to whether the method provided was reasonable." *Id.; see also Stone v. New York, Chicago & St. Louis Railroad Co.*, 344 U.S. 407, 409 (1953) (plaintiff was injured pulling ties using a method as his supervisor instructed, making evidence of three, alternative methods for pulling ties was relevant to whether a railroad was negligent). Likewise, evidence of industry standards may be relevant, though not dispositive, to show that the available methods or conditions were not reasonably safe. *Abernathy*, 940 F.3d at 993. Accordingly, this motion will be DENIED.

E.  **Motion to prelude reference to the Locomotive Inspection Act**

Because Brennan's claim under the Locomotive Inspection Act has been dismissed, this motion will be GRANTED. Although Brennan responded to this motion by explaining how certain evidence is relevant to her FELA claim, BNSF did not seek to preclude any FELA-related arguments in its MIL, so the court need not address this argument.

F.  **Motion to preclude reference to unrelated and irrelevant repairs and work done to Locomotive BNSF 7492**

BNSF also moves to preclude Brennan's experts from offering opinions and evidence about repairs performed on the BNSF 7492 locomotive before and after Brennan's injury. This motion will be GRANTED IN PART and DENIED IN PART. The only specific repair identified in BNSF's motion is the repair to a walkway handrail that was performed before Brennan's injury. As discussed above, that repair has no relevance to the issues remaining for trial and will be excluded.

As for any other defect or repair discussed by Brennan's experts, the court declines to issue a blanket ruling precluding that evidence. Rather, if BNSF wants to challenge the admissibility of a specific defect or repair, it should be prepared to challenge that evidence specifically at the Final Pretrial Conference or it will not be excluded on that basis.

G.  **Motion to preclude evidence of or reference to other railroad's standards or operating procedures**

BNSF moves to preclude Brennan from introducing evidence of standards, practices or checklists used by other railroads unaffiliated with BNSF as evidence that BNSF's standards, practices or procedures were unsafe or unreasonable. BNSF argues that any

11

such evidence is irrelevant, but as explained above, evidence of another railroad's practices may be relevant to whether BNSF's practices were reasonable under accepted or generally accepted standards.  *See Abernathy*, 940 F.3d at 993 ("evidence of safer alternative methods is [] relevant to show that the available methods were not reasonably safe").  Thus, this motion will be DENIED.  That being said, BNSF also states in its motion that it will not stipulate to the authenticity of documents obtained from other railroads.  Accordingly, if Brennan intends to introduce such evidence at trial, she should be prepared to discuss the specific documents at the Final Pretrial Conference and to explain how she intends to authenticate each document.

### H. Motion to preclude reference or evidence related to claims for which Brennan has failed to present evidence of causation

BNSF moves to preclude Brennan from arguing or presenting evidence that her injury was caused by (1) defective air brake equipment resulting in the locomotive's air hoses freezing and becoming difficult to bend; and (2) the unsafe ground conditions and work area where plaintiff was working.  Specifically, BNSF argues that Brennan's expert evidence regarding these circumstances are merely speculative and conclusory, and therefore inadmissible.

This motion will be DENIED.  BNSF's arguments just go to the *persuasiveness* of the experts' opinions, but not to the experts' qualifications or methods, nor to the reliability of their opinions.  Thus, these arguments are more appropriate for trial and ultimately for the jury to determine whether to accept or reject these opinions.

I. **Motion to preclude reference to or evidence of a need or cost for future medical treatment**

BNSF argues that Brennan should be precluded from seeking damages for future medical expenses, because she lacks sufficient evidence for a reasonable jury to find that Brennan will incur any. Brennan disagrees, pointing to evidence offered by her expert witness that Brennan *will* likely need future medical treatment. The court agrees and this is motion will be DENIED. Again, the jury must decide whether Brennan's medical expert is credible and persuasive. After the evidence is presented at trial, BNSF may, of course, renew its argument that Brennan cannot (or at least has failed to) submit evidence for a reasonable jury to award her future medical expenses.

J. **Motion to preclude experts from offering undisclosed opinions or producing any evidence at trial that was not already produced in discovery**

BNSF asks the court to preclude Brennan from offering undisclosed opinions or evidence, but it fails to identify any specific evidence that should be precluded and the court declines to rule in the abstract. Therefore, while this motion must be DENIED as premature and vague, the court will enforce the rules of evidence at trial, as well as enforce the parties' discovery obligations. Thus, if either party has a valid objection to any *specific* piece of evidence or argument, they may still raise the objection at trial.

K. **Motion to preclude evidence, argument or reference that misstates the law**

Like the previous motion, this motion is also based on the abstract proposition that Brennan will misstate to the jury the law governing FELA claims. This motion, too, will be DENIED as premature and vague. The court will instruct the jury regarding the

applicable law based primarily on the Seventh Circuit's standard jury instructions for the claims here, as well as input from the parties. Of course, neither party will be allowed to stray from these substantive instructions.

**L.   Motion to preclude references to other lawsuits and claims involving BNSF**

This motion will be granted as unopposed, with the exception that Brennan may seek permission to introduce evidence or sworn testimony from other lawsuits for impeachment purposes, as appropriate.

**M.   Motion to preclude evidence of or reference to BNSF's size, financial status, solvency, ability to pay or satisfy a judgment, or any other argument about BNSF's status as a large entity**

This motion will also be GRANTED. Neither side may offer evidence about BNSF's size, wealth, solvency or corporate ownership.

**N.   Motion to preclude argument or reference to punitive or exemplary damages**

This motion will be GRANTED as unopposed.

**O.   Motion to preclude evidence, arguments or references to related FELA being the only way a railroad employee may be compensated for an on-duty injury**

This motion will be GRANTED IN PART and DENIED IN PART. As the parties acknowledge, this court handles concerns about the jury's potential confusion regarding FELA and workers compensation by providing an instruction similar to the following:

> You may be familiar with workers compensation, which is a benefit available under state law and applies to most workplace

>injuries. But injuries to railroad employees are governed by a law called the Federal Employers Liability Act, commonly referred to as FELA. You should disregard anything you know about the rules of workers compensation. After you hear the evidence, I will give you more detailed instructions about FELA and the specific law that applies in deciding the issues in this case.

*See Berry*, 2022 WL 3576203, at *4 (citing *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006).) The court will provide a similar instruction in this case, after receiving further input from the parties at the FPTC.

### P. Motion to preclude evidence, arguments or references about congress's intent for enacting FELA

This motion will be GRANTED. The jury does not need to hear evidence or argument about congressional intent behind FELA. This evidence or argument should instead be referred directly to the court for possible inclusion in its instructions to the jury.

### Q. Motion to preclude evidence or reference to railroading or the railroad industry as being dangerous or generally unsafe

The court agrees with BNSF that general accusations of dangerousness against the railroad industry would be irrelevant and unfairly prejudicial, so this motion will be GRANTED, again with the caveat that the court will not preclude evidence or argument regarding whether specific tasks, practices or conditions were dangerous in the context of the incident in this case.

### R. Motion to preclude any reference to insurance

This motion will be GRANTED as unopposed.

**S.   Motion to preclude any "reptile theory" or golden rule arguments**

Brennan does not oppose this motion as it relates to "golden rule" arguments, so that portion of the motion will be GRANTED as unopposed. However, as explained in previous cases of which counsel should by now be aware, this court generally does not grant broad and ill-defined motions to preclude "reptile theory" tactics. *See Berry*, 2022 WL 3576203, at *8. Since BNSF's broad MIL regarding the use of "reptile theory" falls into this category of motions, that motion will be DENIED.

To the extent the rulings above fail to address any of the parties' express concerns, both sides' questions will be governed by the Federal Rules of Evidence and the standards governing FELA claims as articulated in the jury instructions. Moreover, if either side believes that counsel's questions or arguments depart from those rules and standards to mislead the jury, they may object.

ORDER

IT IS ORDERED that:

1) Plaintiff Hope Brennan's motions in limine (dkt. ##66, 68, 85, 89, 91, 103) are GRANTED IN PART and DENIED IN PART as set forth above.

2) The court RESERVES ruling on plaintiff's motion for sanctions (dkt. #111).

3) BNSF Railway Company's omnibus motions in limine (dkt. ##43, 77) are GRANTED IN PART and DENIED IN PART as set forth above.

Entered this 18th day of October, 2022.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge